By the Court—
BROWN, C. J.,
delivering the opinion. ■
After a careful examination of this cáse, I am satisfied that the defendant is not protected by the Statute of Limitations, if all the time is counted out which is covered by the different Acts of Limitation passed after the secession of the State. And the question is fairly made by the record, whether the Statute was legally suspended by the Acts passed during the war, and, if not, whether the healing' or adopting clause in the new Constitution which was retroactive, revived the right of action, after the statute had fully run during the war, under the Acts, then of force passed by a legal legislature.
*Wbatever may have been said on this subject )by others, I shall not stop to discuss the question, whether *235 the Act passed by the different legislative bodies which assembled in this State during the war, were legal and binding or not. Each and every department of the State Government since the termination of the war has conceded their illegality. If we had been successful they would all have been held legal. As we failed we have been obliged to concede their illegality, and the people of the State in convention, have twice made their broad concession by the ratification and confirmation of such Acts, when not passed in aid of the rebellion, or in violation of the Constitution of the United States. Taking for granted then, what the people of Georgia have admitted in two different conventions, and what they have embodied in the Constitution of the State, I think the judicial authority in conformity to the action of the political department of the State Government must lay down the rule, that the Acts passed by the respective legislatures during the war, suspending the Statute of Limitations were illegal, and would have been nugatory and void, but for the Acts of the Conventions of 1865 and 1868, which adopted and gave validity to those Acts. Without this retroactive legislation, according to the repeated admissions of the State since the war, they would have had no force, and all rights in our Courts depending upon the operation of the Statute of Limitations must have been determined under our Acts of Limitation passed prior to the Ordinance of Secession, just as if no Acts on that subject had been passed during the war. And in that case, an action upon an account or promissory note,-was barred at the end of the period fixed by the Statutes of Limitation passed by a legal legislature prior to the war, just as if there had been no legislation on the subject during that period. Apply that rule to this case, and the right of action was barred at an early period in the war.
Now let us see whether it has been revived by the confirmatory retroactive 'legislation since the war, which adopted such Acts passed during the war as were not in aid of the rebellion, (as it must now be called) or- in violation of the *Constitution of the United States. And, I admit in advance, that there is no difficulty in any case when the Statute of Limitations, passed by a legal legislature before the war, had not fully run in favor of the defendant, before the date of the retroactive adopting Ordinance of 1865. If the defendant lacked but a single day of being fully protected by the Statute when the Ordinance was passed, the matter was within the legitimate control of the legislative power, and it might ■ declare that all the time it had run should count nothing and that the right of action should not be barred for such time in future as it might designate, and the confirmation of that Act by the Constitution of 1868 would, in that case, apply and protect the right of action in the plaintiff. But if the Statute of Limitations passed by a legal legisla *236 ture had fully run in favor of the defendant, before the date -of the Ordinance of 1865 the adopting clause in the Constitution of 1868 does not revive the right of action that was barred before the Act of confirmation.
The Constitution of 1868 expressly declares, that these several Acts of confirmation shall not be construed to divest vested rights, nor to make any act criminal otherwise not criminal; but they shall be construed as Acts of peace and to prevent injustice. Now it is well understood by every lawyer, that statutes of limitations are properly termed Acts of peace or of repose. And it is well known that it was the settled policy of the convention which made this Constitution, to do all that could constitutionally be done, for the relief of the people of Georgia, against old debts contracted before or during the war. This humane policy grew out of the general ruin, loss and destruction of property during the war. I hold, therefore, that this provision of the Constitution, when construed in the light of the surrounding circumstances, and with reference to the known policy of the convention, was not intended to stir up strife and litigation, by reviving any right of action already barred; but it was intended, so far as rights were to be affected by the statute of limitations, to ratify the illegal legislation in cases only, where the statute had not fully run in favor of the defendant, *when the Ordinance of 1865, on that subject, was passed, and to let all cases in which the statute had fully run, repose in peace just as if there had been no legislation on that subject during the war, and no retroactive confirmation of Acts passed during that period.
This view of the case is fully sustained by the legislative construction of these confirmatory Acts. The preamble of the Act in relation to the statute of limitations and for other purposes, passed the 16th of March, 1869, recites: “That much confusion has grown out of the distracted condition of affairs during the late war, and that doubts are entertained relative to the law of limitation of actions in this State, which should be put to rest.” It then enacts: “That all Acts of the Legislature of this State, and all' Ordinances of the Conventions of 1865 and 1868, which have the force and effect of law, which are retroactivé in their character, relative to the statute of limitations, shall be held by the Courts of this State to be null and void, in all cases in which the statute had fully run before the passage of said retroactive legislation.”
This is the positive declaration of the political department of the government, founded on the admission of the convention, confirmed by the Legislature, that the Acts suspending the statute of limitations passed during the war were illegal and of no force till they were ratified by a legal convention or Legislature, and the imperative mandate of the Legislature to the Courts, that they shall in no case so construe the *237 retroactive adopting legislation as to revive a right of action which, under the legal legislation on that subject, was fully barred prior to the passage of the confirmatory Acts which related back and made that valid, which, without such confirmation, would have been of no force. Construing all our legislation since the war upon this subject together, I am unable to doubt that it was the intention of the law-making power to treat the Acts relative to the statute of limitations, passed during the war, as of no binding force without ratification, and that it was not intended that any such healing or confirmatory legislation should revive any right of action, *when the statute of limitations, passed by a legal legislature prior to the war, had fully run before the date of the adopting statute. I am aware that the Chief Justice of the Supreme Court of the United States, in delivering the opinion of the Court in the Texas bond case, has given an opinion, that certain Acts of the Legislatures of the seceded States, passed during the war, when not in aid of the rebellion, are to be held valid. It was not, however, necessary to the decision of the case before the Court, to lay down any rule on that subject. And I do not deem it important to enquire whether or not the suspension of the statute of limitations in this State, which was authorized for one year immediately prior to the secession of the States and in contemplation of that event, and the subsequent Acts continuing it during the war, in connection with the Stay-law and law suspending specie payment by the banks, were intended to aid the Confederate cause, by satisfying .all who consented to enlist in the armies or to aid with their money, that they rights would not suffer during its continuance. As it can not be denied that the legislative power of the State since the war has admitted that this legislation was illegal without confirmation, I feel it my duty as a Judge, till the decision of the political department of the State is reversed or changed by that power itself, so to treat it and to administer as well the exception to the confirmatory Acts as the Acts themselves.
We all agree that the objection in the plaintiff’s Interrogatories was properly overruled, it not appearing from the record that there ever was a written order that he could attach to his answers.
Judgment reversed.